**FILED: 10/16/2019 2:46 PM**
**Vickie Edgerly, District Clerk**
**Orange County, Texas**
**Envelope No. 37707016**
**Reviewed By: Annette Vaughan**

CAUSE NO. B190425-C

| | | |
|---|---|---|
| **FAITH TABERNACLE** | § | IN THE 163rd  COURT |
| **PENTECOSTAL CHURCH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **vs.** | § | **DISTRICT COURT OF** |
| | § | |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | **ORANGE COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION
## JURY TRIAL DEMANDED

**COMES NOW, FAITH TABERNACLE PENTECOSTAL CHURCH, INC.** (hereinafter, referred to as Plaintiff), and file this, its **Original Petition**, and for causes of action against CHURCH MUTUAL INSURANCE COMPANY ("CHURCH MUTUAL") (hereinafter, referred to as "Defendant"), would show unto the Court and the jury the following:

### PARTIES AND SERVICE OF PROCESS

1.      Plaintiff **FAITH TABERNACLE PENTECOSTAL CHURCH, INC.** owns the property located at 1735 Highway 12, Vidor, Texas 77662 that is the subject of this lawsuit and is situated in Orange County, Texas.

2.      Defendant CHURCH MUTUAL INSURANCE COMPANY is a foreign insurance company registered to engage in the business of insurance in the State of Texas. Church Mutual Insurance Company is domiciled in the State of Wisconsin. This Defendant may be served with personal service by a process server, by serving its Attorney for Service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

1

EXHIBIT C

## STATUTORY AUTHORITY

3.     This suit also brought in part, under the Texas Insurance Code, Sections 541.051 *et seq.,* 541.151 *et seq.,* 542.051 *et se.,* and Tex. Civ. & Rem. Code Section 38.01 *et seq.*

## JURISDICTION

4.     The Court has jurisdiction over the cause of action because the amount in controversy is within the jurisdictional limits of the Court.

5.     The Court has jurisdiction over Defendant, CHURCH MUTUAL, because Defendant engages in the business of insurance in the state of Texas and the causes of action arise out of Defendant's business activities in the state of Texas.

## VENUE

6.     Venue for this suit for breach of a written contract is permissive in Orange County under Texas Civil Practice & Remedies Code section 15.035(a) because this county was identified as the county wherein the insured property is located and the place for an obligation under the contract to be performed pursuant to the first party property insurance contract referenced herein.

## NOTICE AND CONDITIONS PRECEDENT

7.     Defendant has been provided written notice of the claims made by Plaintiff in this complaint, including a statement of Plaintiffs' actual damages and expenses in the manner and form required by Tex. Ins. Code § 542A.003.[1]

---

[1] Tex. Ins. Code 542A.003 requires pre-suit notice not later than the 61st day before an action is filed, unless notice is impracticable because there is insufficient time to give pre-suit notice before the limitations period will expire.  Plaintiff has provided pre-suit notice within the parameters pursuant to 542A.003(d).

EXHIBIT C

8.     All conditions precedent necessary to maintain this action and in order to maintain claim under the insurance policy in question have been performed, occurred, or have been waived by Defendant.

## FACTS

9.     This lawsuit arises out of the following transactions, acts, omissions, and/or events.  Hurricane Harvey struck South Texas on August 25, 2017 over several days and caused catastrophic damage throughout the region.  On or about August 29, 2017, Plaintiff's property sustained damages as a result of Hurricane Harvey winds over multiple consecutive days.

10.     Plaintiff submitted a claim to Defendant CHURCH MUTUAL pursuant to the contract of insurance, for damages to the property as a result of Hurricane Harvey winds and rain and asked Defendant CHURCH MUTUAL to honor its contractual obligations and cover the cost of repairs to the property.

11.     Defendant CHURCH MUTUAL accepted the Plaintiff's claim and assigned a claim number of 1327318.

12.     Defendant CHURCH MUTUAL then assigned Fred Justice to assist in the adjustment, investigation and evaluation of the claim.

13.     Mr. Justice inspected the property but refused to speak to anyone during or after the inspection.

14.     Karen MacMonagle of CHURCH MUTUAL sent a letter to Plaintiff, dated October 10, 2017, stating that no storm related roof openings were found and denying all interior water damages due to wind driven rain, sump pump failure and flood waters and asking for additional information that would allow them to reconsider their position.

EXHIBIT C

15.     Defendant CHURCH MUTUAL's October 10, 2017 letter did not accept or deny wind damage to the roof, which was the basis of the claim filed by Plaintiff.

16.     Plaintiff then hired Jeff Tucker Builders to inspect the damage and provide an estimate of damages. Jeff Tucker Builders found that Hurricane Harvey winds had substantially damaged the roof and replacement is necessary.

17.     Plaintiff then hired Stevephen Lott of Integrity Claims Services, LLC to inspect the property for damages from Hurricane Harvey, properly investigate and evaluate the claim and communicate with Defendant and its representatives regarding the claim.

18.     Stevephen Lott determined that there was wind damage to the roof.

19.     Mr. Lott provided a copy of the Jeff Tucker Builders estimate to Church Mutual and requested a re-inspection of the property.

20.     After being contacted by Plaintiff's public adjuster regarding the wind damage to the roof, CHURCH MUTUAL assigned Rimkus Consulting ("Rimkus") to inspect the property to determine the cause and origin of the roof damage reported by Plaintiff.

21.     On or about May 18, 2018, an inspection of the property was conducted by Larry E. Tipton of Rimkus Consulting and Trevor Miley of Integrity Claims.

22.     Following the re-inspection, Karen MacMonagle sent a written denial letter to Plaintiff dated June 1, 2018, stating that Hurricane Harvey caused three shingles on the roof to separate and lift, requiring spot repairs. The letter also stated that the remainder of the roof was damaged due to accelerated development of blisters, wear, tear, and deterioration and maintenance, which were all excluded under the policy.

EXHIBIT C

23.     Even though its own engineer, Rimkus Consulting, found that three shingles had been damaged by Hurricane Harvey winds, Defendant CHURCH MUTUAL and Karen MacMonagle, still denied coverage for the wind damage to the roof.

24.     The inspections and investigations completed by Fred Justice, Karen MacMonagle, Rimkus Consulting and Defendant CHURCH MUTUAL were results-oriented and unreasonable and resulted in the improper denial of your insureds' claim. They refused to consider information provided by Plaintiff's representatives that would support coverage for the damage to the roof.

25.     Even though the property had sustained extensive damages from the storm, Justice, MacMonagle, and Defendant CHURCH MUTUAL ignored wind created damages to the property.  Justice and Rimkus completed a results oriented, unreasonable inspection, failed to document all the covered wind damages to the property, ignored facts supporting coverage and improperly denied Plaintiff's damages.

26.     Plaintiff then retained Richard Clarke of Risk Protection Services to re-inspect the property and assist in determining the extent of damage to the exterior of the property. Mr. Clarke inspected the property with Plaintiff. Mr. Clarke provided an estimate of wind damages to the roof based on his inspection of the property in the amount of $45,179.18.

27.     Defendant CHURCH MUTUAL failed to accept or deny coverage for the wind damages to the roof in writing within the statutory deadline.

28.     Based on the improper, inadequate, and incomplete investigation of Defendant CHURCH MUTUAL, and its representatives, the Plaintiff's interior damages were denied.

EXHIBIT C

29.     To date Plaintiff has yet to receive full payment on their Hurricane Harvey claim.

30.     Defendant CHURCH MUTUAL ignored the information provided by the Plaintiff, its public adjuster, and its own engineer, Rimkus.    Instead, Defendant CHURCH MUTUAL chose simply to only rely on the portions of its adjuster's, consultant's, and vendors' reports which supported the results-oriented investigation and coverage decisions supporting denial of Plaintiff's claim.

31.     Defendant CHURCH MUTUAL failed to perform its contractual obligation to compensate Plaintiff under the terms of the Policy.

## CAUSES OF ACTION AGAINST DEFENDANT CHURCH MUTUAL - COUNT I - BREACH OF CONTRACT

32.     Each of the foregoing paragraphs is incorporated by reference in the following.

33.     Plaintiff and Defendant CHURCH MUTUAL executed a valid and enforceable written insurance contract providing insurance coverage to the insured location at.   The policy provides coverage for the peril of wind, hurricane and rain, such as those sustained during Hurricane Harvey, among other perils.

34.     All damages and loss to the Plaintiff's property was caused by the direct result of a peril for which Defendant CHURCH MUTUAL insured the Plaintiff, pursuant to the policy herein, specifically, the perils of hurricane, wind, and rain.

35.     Defendant CHURCH MUTUAL sold the subject insurance policy to Plaintiff insuring the subject insured property in its "as is" condition.

EXHIBIT C

36.     Plaintiff suffered a significant loss with respect to the property at issue and additional expenses as a result of the high winds and rain that occurred during Hurricane Harvey.

37.     Plaintiff submitted a claim to Defendant CHURCH MUTUAL pursuant to the contract of insurance for damages as a result of high winds and rain that occurred during Hurricane Harvey.

38.     Plaintiff provided Defendant CHURCH MUTUAL with proper notice of damage to the exterior and interior of the subject insured property.

39.     Defendant CHURCH MUTUAL ignored the information provided by the public adjuster and other information provided by Plaintiff that supported coverage of Plaintiff's damage and chose to rely solely on its own consultants.

40.     Defendant CHURCH MUTUAL by and through its adjusters and representatives have failed to properly evaluate the damages resulting from the covered cause of loss.

41.     Defendant CHURCH MUTUAL by and through its adjusters and representatives failed to retain the appropriate experts and/or consultants to evaluate the hurricane winds and water damages to the subject property.

42.     As of this date, Defendant CHURCH MUTUAL by and through its adjusters and representatives have failed to pay for the hurricane winds and water damages to Plaintiff's property.

43.     Plaintiff has attempted on numerous occasions to obtain full and complete payment for covered losses pursuant to the insurance policy.

EXHIBIT C

44.     Defendant CHURCH MUTUAL acting through its agents, servants, representatives and employees has failed to properly investigate, evaluate and adjust Plaintiff's claim for benefits in good faith and has further failed to deal fairly with Plaintiff.

45.     Defendant CHURCH MUTUAL has failed and refused to evaluate the information and surrounding facts regarding Plaintiff's covered claim, choosing instead to hide behind palpably incorrect assumptions and conclusions of its agents, employees or consultants.

46.     As of this date Defendant CHURCH MUTUAL continues to be in breach of the contract.

47.     CHURCH MUTUAL ignored the information provided by Plaintiff, their public adjuster, and Defendant's retained engineer, Rimkus during the handling of the claim and did not make any payment to indemnify Plaintiff for the full amount of the covered damages.

48.     Defendant CHURCH MUTUAL failed to make any payment after receipt of the additional information from Plaintiff and its public adjuster.

49.     The mishandling of Plaintiff's claim caused a delay in Plaintiff's ability to fully repair the Property, resulting in additional damages.

**COUNT II - VIOLATIONS OF THE TEXAS UNFAIR OR DECEPTIVE PRACTICES ACT**

50.     Each of the foregoing paragraphs is incorporated by reference in the following.

EXHIBIT C

51.    Defendant CHURCH MUTUAL is an entity that is required to comply with Tex. Ins. Code Sections 541.051; 541.060; 541.061; and 541.151. Defendant's conduct constitutes multiple violations of the Texas Unfair or Deceptive Practices Act.

1.    Misrepresenting a material fact or policy provision relating to coverage at issue;

a.    Making an untrue statement of material fact. CHURCH MUTUAL through its agents, employees, or consultants prepared an estimate of damages that was misleading as to the value of damages to the subject property stating the total damages were denied.

b.    Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made.  Defendant CHURCH MUTUAL through its agents, employees, or consultants failed to advise Plaintiff that it failed to perform proper testing of the building and property in order to more accurately investigate and evaluate the damages resulting from the covered perils of hurricane, wind and rain.

c.    Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. Defendant CHURCH MUTUAL through its agents, employees, or consultants advised Plaintiff and its public adjuster that it had investigated and evaluated the damages to the subject property resulting from the August 29, 2017 hurricane and concluded its coverage determination,

EXHIBIT C

thereby misleading the Plaintiff to conclude that a proper and complete investigation had been performed.

2.   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear.   Defendant CHURCH MUTUAL failed to consider reports provided by Plaintiff's and Defendant's retained engineer and failed to utilize information in the reports that would support coverage of Plaintiff's damages.

3.   Failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim. To date, Defendant has failed to provide a reasonable explanation of the basis of its denial of coverage for all of Plaintiff's damages.

4.   Refusing to pay a claim without conducting a reasonable investigation with respect to the claim. Defendant CHURCH MUTUAL through its agents, employees, or consultants failed to request its employees, agents, or consultants to perform proper testing of the buildings at the subject insured property in order to properly evaluate the extent and value of damages resulting from the Hurricane Harvey event of August 29, 2017.

52.   Defendant's unfair settlement practice in failing to conduct a proper and thorough evaluation, failing to perform adequate testing of the buildings to more accurately investigate and evaluate the damages, failing to advise Plaintiff that it had not performed proper testing of the buildings and had not properly investigated and evaluated

EXHIBIT C

the damages, and preparing both a misleading and inaccurate damage estimate resulted in Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant's liability under the policy was reasonably clear, and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code Sections 541.051, 541.060 and 541.061.

**COUNT III – VIOLATIONS OF THE PROMPT PAYMENT OF CLAIMS ACT**

53.     Each of the foregoing paragraphs is incorporated by reference here fully.

54.     Defendant CHURCH MUTUAL's conduct constitutes multiple violations of the Texas Prompt Payment of Claims Act - Tex. Ins. Code Chapter 542. All violations made under this article are made actionable by Tex. Ins. Code Section 542.060.

55.     Specifically, Defendant CHURCH MUTUAL failed to accept or reject Plaintiff's claim within the time period or notify the Plaintiff why it needed more time, as required by Tex. Ins. Code 542.056.

56.     Defendant CHURCH MUTUAL failed to timely conduct a proper investigation of the damages to the subject properties resulting from a covered peril. resulting in a delay of payment of adequate insurance benefits as contracted under the insurance policy between the parties.

57.     Defendant CHURCH MUTUAL's failure to give adequate consideration to the information provided by Plaintiff, which made liability reasonably clear, resulted in additional delay of payment of the claim after having sufficient information to make payment for such claim.

11

EXHIBIT C

58.     Defendant CHURCH MUTUAL ignored the information provided by Plaintiff and Plaintiff's public adjuster during the handling of the claim and did not make a payment.

59.     Defendant CHURCH MUTUAL, upon receipt of the Richard Clarke estimate from Plaintiff, had sufficient information to make full payment to Plaintiff for the damages, but as of this date has failed to do so.

60.     Defendant CHURCH MUTUAL, upon receipt of the Rimkus Consulting report, had sufficient information to make full payment to Plaintiff for the damages, but as of this date has failed to do so.

## COUNT IV - BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

61.     Each of the foregoing paragraphs is incorporated by reference here fully.

62.     Defendant CHURCH MUTUAL's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to its insured pursuant to the insurance contract and in direct contradiction of the applicable industry standards of good faith and fair dealing.

63.     Defendant CHURCH MUTUAL failed to conduct a proper and thorough evaluation, failing to perform adequate testing of the buildings to more accurately investigate and evaluate the damages, failing to advise Plaintiff that it had not performed proper testing of the buildings and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate.

64.     Defendant CHURCH MUTUAL's failure, as described above, to adequately and reasonably investigate, evaluate, and pay the benefits owed under the insurance contract, knowing full well through the exercise of reasonable diligence that its

EXHIBIT C

liability was reasonably clear, resulted in a breach of the duty of good faith and fair dealing.

65.     Defendant CHURCH MUTUAL ignored the information provided by Plaintiff's public adjuster during the handling of the claim and did not make any payment.

66.     Defenant CHURCH MUTUAL failed to make any payment after receipt of the additional information from the public adjuster, Richard Clarke, and Defendant's retained engineer, when Defendant CHURCH MUTUAL knew or should have known liability was reasonably clear.

## COUNT V – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

67.     Each of the foregoing paragraphs is incorporated by reference here fully.

68.     At all material times herein, Plaintiff was a "consumer" who purchased insurance products and services from Defendant CHURCH MUTUAL and the products and services form the basis of this action.

69.     Defendant CHURCH MUTUAL has violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") in at least the following respects:

  a.   By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action prohibited by DTPA § 17.50(a)(1)(3) in that Defendant CHURCH MUTUAL took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, resulting in a gross disparity between the consideration paid in the transaction and the value received, all in violation of Chapters 541 and 542 of the Texas Insurance Code;

  b.   Generally engaging in unconscionable courses of action while handling the claim; and/or

EXHIBIT C

 c. Violating the provisions of the Texas Insurance Code, as further described elsewhere herein.

## KNOWLEDGE AND INTENT

70. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiff's damages described herein.

## DAMAGES AND PRAYER

71. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff herein, complains of Defendant CHURCH MUTUAL'S acts and omissions and pray that, Defendant be cited to appear and answer and that upon a final trial on the merits, Plaintiff recover from Defendant the following:

72. Plaintiff would show that the aforementioned acts, taken together or singularly, constitute the proximate and/or producing causes of damages sustained by Plaintiff.

73. For breach of contract by Defendant CHURCH MUTUAL Plaintiff is entitled to regain the benefit of their bargain, which is the amount of the claims, together with attorney's fees, pursuant to Tex. Civ. & Rem. Code Sec. 38.001 *et seq.*

74. For noncompliance with the Texas Unfair or Deceptive Practices Act by Defendant CHURCH MUTUAL Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks **for three (3) times** its actual damages, pursuant to Tex. Ins. Code Ann. Section 541.152 *et seq.*

EXHIBIT C

75.     For noncompliance with the Texas Prompt Payment of Claims Act by Defendant CHURCH MUTUAL Plaintiff is entitled to the amount of their claim, as well as ten (10) percent interest per annum post judgment interest, together with reasonable and necessary attorney's fees, as allowed by law, and for any other further relief, either at law or in equity, to which it may show itself to be justly entitled, pursuant to Tex. Ins. Code Sec. 542.058 *et seq.* and 542.060 *et seq.*

76.     For violations of the common law duty of good faith and fair dealing by Defendant CHURCH MUTUAL Plaintiff is entitled to actual damages, direct and indirect consequential damages, mental anguish, and exemplary damages.

77.     For noncompliance with the Texas Deceptive Trade Practices Act ("DTPA") by Defendant CHURCH MUTUAL Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages and mental anguish damages, court costs and attorney's fees.  For knowing conduct of the acts complained of, Plaintiff asks for **three (3) times** their damages, pursuant to the DTPA and Tex. Ins. Code Ann. Section 541.152 *et seq.*

### JURY DEMAND

78.     Plaintiff respectfully demands a **trial by jury**.

### WRITTEN DISCOVERY

### REQUEST FOR DISCLOSURE

79.     Pursuant to Rule 194, you are requested to disclose, within **fifty (50)** days of service of this request, the information or material requested in Rule 194.2(a)-(l).

### INTERROGATORIES

15

EXHIBIT C

80.    A Certificate of Written Discovery is attached, and Plaintiff's First Set of Interrogatories to Defendant, **CHURCH MUTUAL INSURANCE COMPANY**, is being served with this Petition.

### REQUEST FOR PRODUCTION

81.    A Certificate of Written Discovery is attached, and Plaintiff's First Set of Request for Production to Defendant, **CHURCH MUTUAL INSURANCE COMPANY**, is being served with this Petition.

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 1148342**
**CARLA R. DELPIT, Bar No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:    (832) 583-5663**
**Facsimile:    (504) 313-3820**
**Email: psanov@panditlaw.com**
          **cdelpit@panditlaw.com**

**ATTORNEYS FOR PLAINTIFF**
**FAITH TABERNACLE**
**PENTECOSTAL CHURCH, INC.**

16

EXHIBIT C

CAUSE NO. _____

| | | |
|---|---|---|
| **FAITH TABERNACLE** | § | **IN THE ____ COURT** |
| **PENTECOSTAL CHURCH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **vs.** | § | **DISTRICT COURT OF** |
| | § | |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | **ORANGE COUNTY, TEXAS** |

## CERTIFICATE OF WRITTEN DISCOVERY

COMES NOW, Plaintiff, **Faith Tabernacle Pentecostal Church, Inc.,** by and through its undersigned counsel, hereby certifies and propounds upon Defendant, **CHURCH MUTUAL INSURANCE COMPANY,** the following documents in compliance with the applicable Texas Rules of Civil Procedure:

*1.      Plaintiff's First Set of Interrogatories to Defendant Church Mutual Insurance Company; and*

*2.      Plaintiff's First Set of Request for Production to Defendant Church Mutual Insurance Company.*

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: */s/ Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 17635950**
**CARLA R. DELPIT, Bar No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:    (832) 583-5663**
**Facsimile:     (504) 313-3820**
**Email: psanov@panditlaw.com**
**       cdelpit@panditlaw.com**

**ATTORNEYS FOR PLAINTIFF**
**FAITH TABERNACLE**
**PENTECOSTAL CHURCH, INC.**

1

EXHIBIT C

CAUSE NO. B190425-C

| | | |
|---|---|---|
| **FAITH TABERNACLE** | § | **IN THE 163rd COURT** |
| **PENTECOSTAL CHURCH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **vs.** | § | **DISTRICT COURT OF** |
| | § | |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | **ORANGE COUNTY, TEXAS** |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CHURCH MUTUAL INSURANCE COMPANY

COMES NOW, FAITH TABERNACLE PENTECOSTAL CHURCH, INC., Plaintiff in the above-styled and numbered cause of action, and propounds these Requests for Production to Defendant, and requires that within fifty (50) days after service of these Requests for Production upon Defendant, that such Defendant respond to same and produce documents in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 17635950**
**CARLA R. DELPIT, Bar No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:    (832) 583-5663**
**Facsimile:    (504) 313-3820**
**Email: psanov@panditlaw.com**
**            cdelpit@panditlaw.com**

**ATTORNEYS FOR PLAINTIFF**
**FAITH TABERNACLE PENTECOSTAL**
**CHURCH, INC.**

**EXHIBIT C**

## DEFINITIONS AND INSTRUCTIONS

1.      When referring to "Plaintiff" within these Interrogatories, "Plaintiff" shall mean Faith Tabernacle Pentecostal Church, Inc., as well as including any agent, servant, employee, and/or other representative of Faith Tabernacle Pentecostal Church, Inc.

2.      The term "Defendant" or "Church Mutual" means Defendant Church Mutual Insurance Company, and all its present or former officers, directors, board members, employees, agents, servants, affiliates, attorneys, accountants, and other representatives.

3.      The term "Property" or "Loss Location" means Plaintiff's property located at 1735 Highway 12, Vidor, Texas 77662.

4.      The word "document" is used in these Requests in the broad and liberal sense and means any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any kind and description, whether sent, received, or neither, and all copies which differ in any way from the original (whether by interlineation, stamped received, notation, indication of copy sent or received, or otherwise) regardless of whether designated confidential, privileged, or otherwise and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, account statements, summaries, ledgers, pamphlets, periodicals, books, advertisements, objects, letters, memoranda, notes or notations of conversations, contracts, agreements, drawings, telegrams, audio or video tape recordings, communications, including inter-office and intra-office memoranda, delivery tickets, bills of lading, invoices, quotations, claims documents, reports, records, studies, work sheets, working papers, corporate records, minutes of meetings, circulars, bulletins, notebooks, bank deposit slips, bank checks, canceled checks, check stubs, diaries, diary entries, appointment books, desk calendars, data processing cards and/or tapes, computer software, photographs, transcriptions or sound recordings of any type of personal or telephone

EXHIBIT C

conversations, interviews, negotiations, meetings or conferences, or any other things similar to any of the foregoing.

5.      The word "communication" means any words heard, spoken, written or read, regardless of whether designated confidential, privileged or otherwise, and including, without limitation, words spoken or heard at any meeting, discussion, interview, encounter, conference, speech, conversation or other similar occurrence, and words written or read from any documents(s) as described above.

6.      The term "person" means individuals or entities of any type, including, but not limited to, natural persons, governments (or any agencies thereof), quasi-public entities, corporations, partnerships, groups, mutual or joint ventures and other forms of organizations or associations.

7.      "Date" shall mean the exact date, month, and year, if ascertainable, or if not, the best approximation thereof (including by relationship to other events).

8.      As used herein, the words or phrases, "explaining," "describing," "defining," "concerning," "reflecting" or "relating to" when used separately or in conjunction with one another mean directly or indirectly mentioning, pertaining to, involving, being connected with or embodying in any way or to any degree the stated subject matter.

9.      The term "relate to" or any similar phrase shall mean refer to, reflect on, concern or be in any way logically or factually connected with the matter discussed.

10.     The term "third parties" means any individual, entity, or otherwise, engaged by Defendant to handle some activity in the processing of Plaintiff's insurance claim.

11.     Any answers indicating action taken by Defendant should specify the name and a capacity of the individual, whether director, officer, employee, attorney, or agent taking such action.

EXHIBIT C

12.     When the identification of a corporation, partnership, or other legal entity is required to properly answer any request for production, please include the name, present or last known address, and a brief description of the primary business in which the entity is engaged. With respect to any particular entity, the information other than the name need be given only once.

13.     Any document called for herein which Defendant claims to be privileged against discovery on any ground shall be identified by giving:

a.  The general type of document, i.e., letter, memorandum, report, miscellaneous notes, etc.
b.  The date;
c.  Each author;
d.  Each organization, if any, with which each author was then connected;
e.  Each addressee or recipient;
f.  Each other distribute thereof;
g.  Each organization, if any, with which each addressee, recipient or distribute was then connected;
h.  A general summary of the subject matter;
i.  The grounds for refusal to produce such documents; and
j.  The present location of each such document and each copy thereof known, including the title, index number and location, if any, of the file in which the document was removed, and the identity of each person responsible for the filing or other disposition of the document.

14.     Every document called for herein on which Defendant has knowledge or information, but which is not in Defendant's possession, custody or control or the possession, custody or control of counsel for the Defendant, shall be identified in the manner set forth in the preceding paragraph.  Defendant shall provide a signed Release authorizing Plaintiff's counsel to obtain such document.

15.     If a request is made for production of documents which are no longer in possession, custody, and/or control of the Defendant, state when such documents were most recently in the possession, custody and/or control of Defendant, and what dispositions were made of them,

EXHIBIT C

including the identity of the persons believed to be presently in possession, custody and/or control of the documents. If a document has been destroyed, state when such document was destroyed, identify the persons who destroyed the document, and the persons who directed that the document be destroyed and the reason the document was destroyed.

16.     Every document produced shall be organized and labeled to correspond to each and every paragraph and/or subparagraph of this Document Request to which it responds.

17.     The word "exhibit" means, unless otherwise indicated, all documentary, tangible or other similar things as defined above, of any kind or character, within or without the Defendant's possession, custody or control, which will be used at trial to prove any claims or defenses.

18.     The terms "and" and "or" as used in these Requests for Production of Documents are not intended as words of limitation. Thus, any sentence or phrase herein formed in the disjunctive shall also be taken in the conjunctive, and vice versa. Similarly, any word formed in the singular shall also be taken in the plural, and vice versa. Also, any verb in the present tense shall also be taken in the past, imperfect, and future tenses, and vice versa. Finally, any pronoun in the masculine gender shall also be taken in the female gender, and vice versa.

19.     Unless otherwise specified, each Request requires a full answer for every period of time with respect to which Defendant intends to offer any evidence.

20.     If more than one copy of a requested document exists, and if one or more documents have any writing on them which differentiate them from any other copies, Defendant shall produce all such copies.

21.     If at any time subsequent to production of these documents requested herein, any document responsive to this Request is located or comes within the custody, possession or control of the Defendant, Plaintiff requests that it forthwith be produced.

EXHIBIT C

If counsel for Defendant should need any clarification of any Request for Production of Documents, said counsel shall contact Phillip N. Sanov or Carla R. Delpit, counsel for Plaintiff.

**PLEASE RESPOND BY LISTING THE QUESTIONS BEFORE EACH ANSWER**

EXHIBIT C

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Please produce all documents relied upon by Defendant in its responses to Plaintiff's Interrogatories.

**RESPONSE:**

2.    Please produce all documents Defendant is requested to identify in Plaintiff's Interrogatories.

**RESPONSE:**

3.    Please produce all documents, cover to cover including jackets, related to the insurance policy Defendant provided to the Plaintiff, including but not limited to Defendant's claim file(s) and Underwriting file(s) maintained by Defendant relating in whole or in part to Plaintiff's insured property or claim.

**RESPONSE:**

4.    Please produce all documents related to Defendant's Answer to Plaintiff's Petition/Complaint.

**RESPONSE:**

5.    All charts, or other such documents, evidencing the hierarchy in Defendant's claims department and underwriting departments involved in the underwriting and/or handling of Plaintiff's claim.

**RESPONSE:**

6.    Please produce all documents related to Defendant's investigation of Plaintiff's insurance claim.

**RESPONSE:**

EXHIBIT C

7. Please produce all documents related to and relied upon in formulating the estimate and payment of Plaintiff's insurance claim, including but not limited to any notes, drafts or copies of damage estimates, inspection reports, or engineer reports, with or without writing on them.

**RESPONSE:**

8. Please produce any documentation regarding the reserve amount established by Defendant with regard to the claim at issue.

**RESPONSE:**

9. Please produce any and all documentation regarding the amount of damages paid out on any and all claims for all policyholders located within five (5) miles of the Loss Property, including but not limited to any documentation received from the policyholder that suggested that greater damage was sustained than was paid for under the policy.

**RESPONSE:**

10. Please produce the employee file for each individual responsible for calculating the estimated damage and processing of Plaintiff's insurance claim, including but not limited to any employee in any supervisory role. This excludes any medical information or social security numbers.

**RESPONSE:**

11. Please produce all documentation relating to the employee compensation and benefits of each of the above employees, and that of their immediate supervisor, including but not limited to any employee incentive or motivation plans.

**RESPONSE:**

12. Please produce all photos and videos that depict the damage alleged in this Action.

**RESPONSE:**

EXHIBIT C

13.     Please produce all documents pertaining to communications Defendant's employees had concerning the damage to the Property at issue in this Action either among themselves, with the Plaintiff, or with third parties, including but not limited to, reinsurers.

**RESPONSE:**

14.     Please produce all exhibits you intend to present at the time of trial.

**RESPONSE:**

16.     Please produce the curriculum vitae and report for any expert witnesses whom you intend to call to testify at the time of trial or whom you consulted at any time related to this Action.

**RESPONSE:**

17.     Please produce all documents submitted by you or on your behalf to any person whom you intend to call to testify at the time of trial or whom you consulted at any time during the pendency of this claim.

**RESPONSE:**

18.     Please produce all documents related to your claims that were generated by any person whom you intend to call to testify at the time of trial or whom you consulted at any time related to this claim or the storm that occurred on the date of loss.  This request includes, but is not limited to, any correspondence, reports, or evaluations provided by these persons and the drafts thereof.

**RESPONSE:**

19.     Please produce all documents related to any and all prior claims filed by Plaintiff to Defendant arising out of or related to any damage at the Property.

**RESPONSE:**

20.     Please produce any and all emails sent or received on any of Defendant's computers or transmitted by any of Defendant's servers, beginning in January 2017, and continuing to the

EXHIBIT C

present, in which the terms "Faith Tabernacle Pentecostal Church, Inc." and/or "1735 Highway 12" and/or "1327318" appear, whether together or apart, along with any of the following terms: "claim", "damage", "storm", "water", "mold," "estimate", "inspection", "payment", "denial", "delay", "re-inspection," "reinspection," "settlement," "settle," "appraisal."

**RESPONSE:**

21.     Please produce all documents relating to insurance companies or other companies which have a financial interest in the outcome of this litigation against Defendant.

**RESPONSE:**

22.     Please produce all documents relating to complaints, hearings, lawsuits, or other actions filed against Defendant by any State of Texas regulatory agency involved in the regulation of the insurance industry for the past 10 years.

**RESPONSE:**

23.     Please produce all documents related to the training of adjusters in the state of Texas, and specifically for the adjusters in this matter, for the past 10 years.

**RESPONSE:**

24.     Please produce all documents related to the Defendant's policy regarding denial of insurance claims generally as well as specifically the denial of Plaintiff's insurance claim for the past 10 years.

**RESPONSE:**

25.     A complete copy of any documents relating to best practices in handling property insurance claims including, but not limited to, catastrophe plans, claim guidelines, claim manuals, or any other such documents applicable to the handling of property insurance claims submitted by Texas policyholders for the past ten years.

**RESPONSE:**

EXHIBIT C

26.     Please produce a copy of your complete claim file related to the claim(s) made the basis of this suit.

**RESPONSE:**

27.     Please produce a copy of your complete underwriting file related to the insured and property or premises made the basis of this suit

**RESPONSE:**

EXHIBIT C

CAUSE NO. B190425-C

| | | |
|---|---|---|
| **FAITH TABERNACLE** | § | **IN THE 163rd COURT** |
| **PENTECOSTAL CHURCH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **vs.** | § | **DISTRICT COURT OF** |
| | § | |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | **ORANGE COUNTY, TEXAS** |

---

### PLAINTIFF'S INTERROGATORIES TO DEFENDANT
### CHURCH MUTUAL INSURANCE COMPANY

---

COMES NOW, FAITH TABERNACLE PENTECOSTAL CHURCH, INC., Plaintiff in the above-styled and numbered cause of action, and propounds these Requests for Interrogatories to Defendant, and requires that within fifty (50) days after service of these Requests for Interrogatories upon Defendant, that such Defendant respond to same and produce documents in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 17635950**
**CARLA R. DELPIT, Bar No. 24082183**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:    (832) 583-5663**
**Facsimile:    (504) 313-3820**
**Email: psanov@panditlaw.com**
        **cdelpit@panditlaw.com**
**ATTORNEYS FOR PLAINTIFF**
**FAITH TABERNACLE PENTECOSTAL**
**CHURCH, INC.**

1

EXHIBIT C

## DEFINITIONS

1.     When referring to "Defendant," "you" or "your" within these Interrogatories, "Defendant", "you" or "your" shall mean Defendant. and all its present or former officers, directors, board members, employees, agents, servants, affiliates, attorneys, accountants and other representatives.

2.     The terms "Defendant's employees" means all present or former officers, directors, board members, employees, agents, servants, affiliates, attorneys, accountants and other representatives of Defendant.

3.     The words "document" or "documents" mean any kind of written or graphic matter, however produced or reproduced of any kind or description, whether sent or received or neither, including but not limited to: the original or any copy of correspondence, records, memoranda, data notes, communications, messages, telegrams, minutes, reports, schedules, tables, graphs, charts, books, accounts, vouchers, bills, statements, journals, ledgers, checks, invoices, contracts, agreements, orders, diaries, and magnetic or other recorded tapes.

4.     The words "tangible evidence" means any and all other physical materials or matter of any kind or description, which is not a document.

5.     The words "regarding," "relating to" or "pertaining to," when used with respect to a document, agreement, subject or fact, means embodying, containing, evidencing, reflecting, reciting, recording, supporting, repeating or referring to.

6.     When the term "identify" refers to writing, documents, statements, photographs, or any other item, it means to state the identity and address of the person preparing the same, the date of the same, a description of the nature and subject matter of the same and the present custodian thereof; if the term "identify" refers to a statement, it means that in addition to furnishing the

2

EXHIBIT C

foregoing information, to state the identity of the person whose statement was taken.

7.      When the term "identify" refers to a person, it means to provide the person's full name, the name of the person's current employer, the person's current business address, and the person's current residential address.

8.      The term "or" should not be read so as to eliminate any part of the Interrogatory, but whenever applicable, it shall have the same meaning as the term "and".  For example, an Interrogatory stating "support or refer" shall be read as "support and refer" if an Answer that does both can be made.

9.      The term "this Action" means the underlying lawsuit.

10.     The term "Property" or "Loss Location" means Plaintiff's property located at 1735 Highway 12, Vidor, Texas 77662.

11.     The term "insurance claim" means the claim Plaintiff Faith Tabernacle Pentecostal Church, Inc. submitted to Defendant Church Mutual Insurance Company for damages sustained that is the basis of this Action.

12.     The term "function" means the responsibility, role, process, or activity of the person referenced.  Specific to employees and any third parties, the term "function" refers to what activity the employee or third party performed in handling Plaintiff's insurance claim.

13.     The term "third parties" means any individual, entity, or otherwise, engaged by Defendant to handle some activity in the processing of Plaintiff's insurance claim.

14.     The term "nature of the business relationship" means the manner in which Defendant engaged a third party, such as by contract or otherwise, and the length of the relationship.

15.     The term "document retention" means the manner in which electronic or paper

3

EXHIBIT C

documents are filed, stored, and recovered by Defendant.

16.     The term "regulatory agency" means any entity of the state of Texas involved in the regulation of the insurance industry with duties including by not limited to the receipt of consumer complaints, to initiate and conduct administrative hearings, to promulgate administrative rules, to issue administrative findings and fines, or to initiate law suits.

## INSTRUCTIONS

1.     The information sought must be given, whether secured by you, your agent, your representative, your attorney, or any other person who has made this knowledge to you, or from whom you can get this information, and who is competent to testify as to the facts stated.

2.     The interrogatories shall be deemed continuing and supplemental answers thereto shall be required immediately upon receipt thereof, should Defendant directly or indirectly obtain further or different information from the time the responses are served to the time of trial.

3.     Defendant's answer to one interrogatory or part of an interrogatory may be incorporated by reference in Defendant's answer to other interrogatories or parts of interrogatories if the clarity of the response will not be compromised.

4.     If Defendant objects to any interrogatory on the basis of privilege or other legal doctrine, for each and every objection: (a) state the privilege or other legal doctrine that is the basis for Defendant's objection; (b) state the factual basis for Defendant's claim that a privilege or other legal doctrine applies to the interrogatory; and (c) identify the document or information that Defendant's claim is privileged in a privilege log to be served contemporaneously with Defendant's responses.

4

EXHIBIT C

**PLEASE RESPOND BY LISTING THE QUESTIONS BEFORE EACH ANSWER**

**INTERROGATORIES**

1.      Identify the person(s) responsible for preparing the responses to these interrogatories.  For each interrogatory, identify the person who participated or assisted in the preparation of the response as well as each person whose files were consulted to respond to each interrogatory.

**ANSWER:**

2.      Identify all of Defendant's employees who were involved in the processing/handling/adjusting of Plaintiff's insurance claim.  For each, provide:

   a.      Their full name;
   b.      Their job title;
   c.      Their direct supervisor;
   d.      Their telephone number; and
   e.      Their function in processing of Plaintiff's claim.

**ANSWER:**

3.      Identify any third parties who were involved with the processing/handling/adjusting of Plaintiff's insurance claim.  For each, provide:

   a.      Their full name;
   b.      Their employer;
   c.      Their job title;
   d.      Their telephone number;
   e.      Their function/role in processing Plaintiff's insurance claim; and
   f.      The nature of the business relationship between Defendant and the third party.

**ANSWER:**

4.      Identify the employee(s) or individual(s) responsible for Defendant's document retention, electronic and physical.  Specifically identify the employee(s) or individual(s) who can search past emails, phone calls, paper correspondence, and other documents relating to Plaintiff's

5

EXHIBIT C

insurance claim.  For each, provide:

        a.     Their full name;
        b.     Their job title;
        c.     Their telephone number;
        d.     The type of document retention work they do; and
        e.     Their function/role in document retention.

**ANSWER:**

5.     For this claim, please identify Defendant's employees responsible for training

Defendant's adjusters, including employees responsible for developing the training program and

training documents for adjusters.  For each, provide:

        a.     Their full name;
        b.     Their job title;
        c.     Their telephone number; and
        d.     Their direct supervisor's name and contact information.

**ANSWER:**

6.     For this claim, please identify Defendant's employees responsible for hiring or

otherwise contracting with independent adjusters for the purposes of inspecting insurance claims.

For each, provide:

        a.     Their full name;
        b.     Their job title;
        c.     Their telephone number; and
        d.     Their criteria for selecting independent adjusters.

**ANSWER:**

7.     Did any of Defendant's employees or any third parties give any statements, written,

recorded or stenographic, to anyone concerning the damage to the Property at issue in this Action?

If so, provide for each statement:

        a.     The date the statement was given;
        b.     The name, address and telephone number of each person taking the
                statement;

EXHIBIT C

        c.     Whether such statement was written, recorded or taken by any other
means;

        d.  ·  The name, address, and telephone number of the present custodian of the
statement.

**ANSWER:**

8.     Were any statements, written or otherwise, obtained from anyone by Defendant's

employees or any third parties in connection with the damage to the Property at issue in this

Action?  If so, provide for each statement:

        a.     The date the statement was given;

        b.     The name, address, and telephone number of the person giving the
statement;

        c.     Whether such statement was written, recorded or taken by any other
means;

        d.     The name, address, and telephone number of each person taking such
statements;

        e.     The name, address, and telephone number of the present custodian of the
statement.

**ANSWER:**

9.     Did Defendant's employees or any third parties take any photographs, videos or

representations of any objects that were taken in connection with or which may relate to the

damage at the Property at issue in this Action?  If so, state:

        a.     The number of photographs, videos or representations you have;

        b.     The subject matter of each photograph, video or representation;

        c.     The dates the photographs, videos or representations were taken;

        d.     The name, address, and telephone number of each person taking the
photographs, videos or representations;

        e.     The name, address, and telephone number of the present custodian of the
photographs, videos or representations.

**ANSWER:**

10.     Have any reports or memoranda been prepared by Defendant's employees or any

third parties regarding the damage to the Property at issue in this Action?  If so, for each such

document provide:

**EXHIBIT C**

a.    The name, address, and telephone of the person who prepared the document;
b.    A complete description of the subject matter of the document;
c.    The date the document was created;
d.    The name, address, and telephone number of the present custodian of the document.

**ANSWER:**

11.    With regard to any and all communications Defendant had regarding the damage at the Property with anyone, whether between Defendant's employees, any third parties, or the Plaintiffs, state:

a.    A complete description of each such communication;
b.    Whether such communication was written or verbal;
c.    The date of each such communication;
d.    The name, address, and telephone number of each person with whom such communication was made;
e.    Identify all documents related to each such communication and the author.

**ANSWER:**

12.    Identify any documentary evidence Defendant's employees or any third parties, or submitted to Defendant which may be relevant to the issues of this Action other than photographs, videos, representations or statements identified elsewhere in these interrogatory answers.

**ANSWER:**

13.    Describe in detail any and all prior insurance claims filed by Plaintiffs arising out of or related to any damage at the Property, including:

a.    A complete description of each such claim;
b.    Whether each such claim was made in writing or verbally;
c.    The date each such claim was made;
d.    The name, address, and telephone number of each person making such claim;
e.    The name, address, telephone number, job title, and function in handling the claim of each person to whom such claim was directed;
f.    A complete description of a response to each such claim;
g.    Whether such response was made in writing or verbally;

EXHIBIT C

   h. The name, address, telephone number, job title, and function in handling
    the claim of each person responding to each such claim;

   i. Identify all documents related to each such claim.

**ANSWER:**

  14. Please identify any and all individuals associated with the underwriting of the

insurance policy between Defendant and Plaintiff.  For each individual, please state:

   a. Their full name;

   b. Their job title;

   c. Their direct supervisor;

   d. Their telephone number; and

   e. Their function in processing of Plaintiff's claim.

**ANSWER:**

  15. Please identify each person by name and address whom you expect to call as an

expert witness at trial, state the subject matter about which the expert is expected to testify; and

state the substance of the facts and opinions as to which the expert is expected to testify and a

summary of the grounds of each opinion.

**ANSWER:**

  16. Provide a list of all complaints, hearings, lawsuits, or other actions filed against

Defendant by any State of Texas regulatory agency involved in the regulation of the insurance

industry in the past 10 years.  For each complaint, provide:

   a. The date of the action;

   b. A complete description of the action;

   c. The finding or final determination of the action;

   f. Whether a fine or other sanction was issued against Defendant, and if so,
    in what amount or what type of sanction.

**ANSWER:**

  17. Provide the number of property insurance policies the Defendant issues in the state

EXHIBIT C

of Texas, and how many it issued in Texas in each year of the past five years.

**ANSWER:**

18.     State whether or not any insurance company or any other company (including any company with excess or umbrella coverage) has a financial interest in the outcome of this litigation against Defendant.  For each entity that is not an insurer, please describe the arrangement between you and that other company in detail, including the nature and terms of any indemnification agreement or liability-shifting responsibility that pertains to this litigation against you.  If an insurer, state the following:

    a.   Name of the insurance company;
    b.   Whether the insurance company is a stock company or mutual company;
    c.   Type of insurance;
    d.   Policy number; and
    e.   Limits of the policy applicable to the occurrence mentioned in these
         pleadings.

**ANSWER:**

19.  With respect to any payment amounts issued to the plaintiff in this matter since the date of the loss, please list all payment amounts and for each payment amount please state under which insurance coverage within the policy of insurance between the plaintiff and the defendant that the payment was made.

**ANSWER:**

20.     Identify the dates any underwriting inspections were made, by whom they were made, produce a copy of the inspection results, and produce any and/or correspondence that was sent by State Auto following any underwriting inspections.

**ANSWER:**

EXHIBIT C

21.    Identify the date of loss at issue, how defendant determined the same and provide the name of all employees and third parties that participated in any way in determining the date of loss.

**ANSWER:**

11

EXHIBIT C